Marion V. Cruz (SBN 244223)
Email: Marion.Cruz@WilsonElser.com
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
525 Market Street, 17th Floor
San Francisco, California 94105
Telephone: (415) 433-0990
Facsimile: (415) 434-1370

Attorneys for Plaintiff
CARLTON A. MASTERS

FILED

FEB 1 1 2015

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

EDL

CV 15 80 062 MISC

| | |
|---|---|
| *In re* Ex Parte Application of | : CASE NO.____ |
| | : |
| **CARLTON A. MASTERS** | : *EX PARTE* APPLICATION FOR AN |
| | : ORDER PURSUANT TO 28 U.S.C. 1782 |
| Applicant. | : GRANTING LEAVE TO OBTAIN |
| | : DISCOVERY FOR USE IN A FOREIGN |
| | : PROCEEDING AND SUPPORTING |
| | : MEMORANDUM |

1

Carlton A. Masters hereby applies to this Court *ex parte* for an Order pursuant to 28 U.S.C. 1782 granting Mr. Masters leave to obtain targeted discovery from Google Inc. ("Google") for use in a foreign proceeding pending before the Supreme Court of Judicature of Jamaica, Commercial Court. In support of this application, Mr. Masters submits the below memorandum of points and authorities and the Declarations of Carlton A. Masters (the "Masters Declarations") as Attachment 1 and Elizabeth B. Sandza (the "Sandza Declaration") as Attachment 2. Applicant also attaches a proposed Order and subpoena to be served on Google.

## INTRODUCTION

On March 7, 2014, Mr. Masters' Gmail account was hacked by an unknown person in Taiwan who used Mr. Master's Gmail to email The First Global Bank Limited in Kingston, Jamaica ("First Global"), and fraudulently order the transfer of $201,000 USD from Mr. Masters' First Global bank account to the hacker's bank account in Taiwan. Mr. Masters' Gmail address was not the email address he had authorized for use with First Global, and First Global did not confirm Mr. Masters' identity. Upon noticing the unauthorized pending withdrawal to his account, Mr. Masters contacted First Global and asked that they reverse the transaction. First Global agreed to stop the transaction, but failed to do so. Subsequently, First Global credited Mr. Masters' account in the amount of the unauthorized withdrawal, but later removed the replaced sum without Mr. Masters' agreement. Mr. Masters has filed suit against First Global in the Supreme Court of Judicature of Jamaica, Commercial Court, seeking a refund of $201,000 USD.

To help prove before the Jamaican court that Mr. Masters' account was hacked and that it was not he who requested the wire transfer from his account to the Taiwan account, Mr. Masters now seeks discovery from Google in the form of any documents or records showing or

2

reflecting: the IP address of any computer sending, receiving and/or deleting emails from March 5 through March 7, 2014, and what actions were performed within Gmail by any such computers; any suspicious activity in Mr. Masters' Gmail account for the month of March, 2014; any unsuccessful password attempts for February 1, 2014 to March 10, 2014; any account logins for March 5, 6 and 7, 2014; any changes in account settings made from February 1, 2014 to March 10, 2014; and documentation verifying the date he opened his Gmail account.

All of the information sought through this discovery is information about the Applicant, Mr. Masters, or information previously sent to him. It is information that he is no longer able to access himself through his Gmail account. See Attachment 1, Masters Declaration.

## BACKGROUND

Mr. Carlton Masters is a U.S. citizen, who has a home in Jamaica, and holds a number of personal bank accounts with First Global Bank, a commercial bank headquartered in Kingston, Jamaica. The First Global accounts include two Jamaican dollar accounts and two US Dollar accounts. When Mr. Masters enrolled in First Global's online banking program in 2010 or early 2011, he designated his Hotmail email address as the email authorized to conduct business with First Global. Since then, Mr. Masters has issued almost forty instructions to First Global from his Hotmail account, and has received over sixty communications from First Global to his Hotmail account. Mr. Masters also contemporaneously operated a Gmail address, which was not designated or authorized for banking with First Global.

On or about March 7, 2014, Mr. Masters discovered that $201,000 USD had been transferred from one of his USD bank accounts with First Global to an account held by "Chen Wei Lung" at E. Sun Commercial Bank in Taiwan; both the Taiwanese bank and the purported beneficiary were and are completely unknown to Mr. Masters. Mr. Masters immediately

3

contacted First Global and a bank representative told Mr. Masters that she had earlier that day received email instructions from an email apparently in Mr. Masters' name[1] (the Gmail email) which instructed First Global to transfer the funds, in U.S. dollars, from one of Mr. Masters' Jamaican dollar accounts to the Taiwan account. First Global responded to the email that there were insufficient funds in the Jamaican dollar account, and suggested instead transferring the money from one of Mr. Master's USD accounts that contained adequate funds (thus revealing information not previously known to the hacker, i.e. the existence of the USD account and that it held funds in excess of $201,000). The hacker accordingly ordered the transfer from the USD account.

At no time did First Global attempt to confirm the instruction through the designated Hotmail address, although it claims to have tried and failed to call Mr. Masters. Mr. Masters had never, in his seven year relationship with First Global, wired any sum of money to Taiwan, and the amount of $201,000 was uncharacteristically large for Mr. Masters to wire from his personal bank account, and a large transfer for personal banking generally.

First Global agreed to stop/reverse the wire transfer, but failed to do so, and the sum was withdrawn from Mr. Master's account. Subsequently, First Global credited Mr. Masters for the fraudulently deducted sum, but then later removed it. Mr. Masters has filed suit in Jamaica alleging that First Global negligently and in breach of its fiduciary duties transferred $201,000 to the Taiwanese account and wrongfully and in breach of its banking contract with Mr. Masters removed the $201,000 after it had credited him, without his authorization.

The records and documents reflecting the fraudulent activity in Mr. Masters' Gmail account, which Mr. Masters hereby seeks from Google, are directly relevant to this Jamaican

---

[1] Notably, the email requested the transfer from a First Global account in the name of "Carl Masters" and not the name of "Carlton Masters" by which name Mr. Masters owns and operates the First Global accounts.

796140v.2

proceeding. These documents and records cannot be obtained in Jamaica as Google has no offices there. Accordingly, Mr. Masters respectfully requests that this Court enter the proposed Order at Exhibit A allowing Mr. Masters to serve Google with the subpoena at Exhibit B.

## LEGAL STANDARD

The purpose of Section 1782 is "to provide federal-court assistance in the gathering of evidence for use in a foreign tribunal." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). This District has authorized *ex parte* applications for discovery as an "acceptable method for seeking discovery pursuant to Section 1782." *In re Roberts*, No. C12-80124 MISC RS (LB), 2012 WL 2862122, at *2 (N.D. Cal. July 11, 2012); *see also, In re Ex Parte Application of Apple Inc.*, No. MISC 12-80013 JW, 2012 1570043, at *1 (N.D. Cal. May 2, 2012). Because "our courts favor broad discovery generally," courts favor "authorize[ing] the issuance of [ ] requested subpoena [under 28 U.S.C. 1782]." *In re Ex Parte Application of LG Electt. Deutschland GmbH*, No. 12-cv-1197-LAB (MDD), 2012 WL 1836283, at *3 (N.D. Cal. May 21, 2012).

The statute provides, in part:

> The district court in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made. . . upon the application of any interested person and may direct that the testimony or statement may be given, or the document or other thing be produced, before a person appointed by the court.

5

28 U.S.C. 1782(a). Accordingly, a court is authorized to grant an application for discovery under Section 1782 when: "(1) the discovery sought is from a person residing in the district court to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the applicant is a foreign or international tribunal or an 'interested person.'" *In re Apple Inc.*, 2012 WL 1570043 at *1.

In addition to these three statutory requirements, the Supreme Court has articulated several other factors which courts should weigh in exercising their discretion in granting Section 1782 applications, which include: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the request is an attempt "to circumvent proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the requested discovery is "unduly intrusive or burdensome." *Intel Corp.*, 5442 U.S. at 264-65; *see also, In re Apple Inc.*, 2012 WL 1570043, at *1.

## ARGUMENT

The three statutory requirements are met and the several discretionary factors weigh in favor of granting Mr. Masters' application.

### I. MR. MASTERS' APPLICATION MEETS THE STATUTORY REQUIREMENTS OF SECTION 1782.

#### A. Google resides in the Northern District of California.

The first statutory requirement is that the party from whom the discovery is sought resides in or "is found in" the jurisdiction of the district court from whom the application is sought. *In re Apple Inc.*, 2012 WL 1570043 at *1. Google is headquartered in Mountain View, California, which is within the jurisdiction of the Northern District of California, and Google's

6

legal team has told Mr. Masters' counsel that it accepts subpoenas issued by this court. *See* Exhibits A and B to the Sandza Declaration (print out of Google office locations from Google web site and email from Google counsel to Ms. Sandza). Of note, Google does not have offices in Jamaica.

### B. The discovery Mr. Masters seeks is for use in a Jamaican proceeding.

The second statutory requirement is that the discovery requested "is for use in a proceeding before a foreign tribunal." The discovery Mr. Masters seeks from Google is to prosecute an action he initiated before the Supreme Court of Judicature of Jamaica. *See* Exhibit C to the Sandza Declaration (Claim Form between Carlton Masters and First Global Bank Limited, in the Supreme Court of Judicature of Jamaica, in the Commercial Court). The Supreme Court of Judicature of Jamaica qualifies as a foreign 'tribunal' for the purposes of Section 1782.

### C. Mr. Masters is an 'interested person' in the Jamaican proceeding because he is the plaintiff.

The final statutory requirement is that the person seeking discovery be "interested" in the foreign proceeding. Mr. Masters is the plaintiff in the Jamaican action, *see* Exhibit 3 to Sandza Affidavit, and it is well-settled that named parties qualify as "interested." *See Intel Corp.*, 542 U.S. at 256 ("No doubt litigants are included among . . . the 'interested person[s]' who may invoke 1782."); *In re Roebers*, 2012 WL 2862122, at *3 ("There is no question that Ms. Roeber is an 'interested person' as she is a litigant in the proceeding.").

## II. THE SUPREME COURT'S DISCRETIONARY FACTORS WEIGH IN FAVOR OF GRANTING MR. MASTERS' APPLICATION.

### A. Google is not a participant in the Jamaican proceeding so there is no other mechanism through which Mr. Masters could seek discovery from Google.

In *Intel*, the Supreme Court explained that whether the party from whom discovery was sought is a party in the foreign proceeding must be a factor in deciding whether to allow discovery under Section 1782 because "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent 1782 aid." *See Intel Corp.*, 542 U.S. at 264. The Court expressed its concern that a party to a foreign litigation could used Section 1782 to circumvent the procedural or other limitations on discovery imposed in that foreign proceeding. *See, id.* This is not, however, a concern here because Google is not a party in the Jamaican action.

### B.      Mr. Masters seeks relevant information that will aid the Jamaican court in its truth finding and resolution of the case.

One of the Supreme Court's *Intel* factors courts should weigh is "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel Corp.*, 5442 U.S. at 264-65. This factor weighs in favor of allowing the sought discovery where the discovery sought is "critical" in light of the "nature and character" of the foreign proceeding. *London v. Does 1-4*, 279 Fed. App'x 513, 515 (9th Cir. 2008) (affirming a Section 1782 application where the proof sought was 'critical' to the pending action abroad). Indeed, at least one federal circuit has described documents relevant to the foreign proceeding as "presumptively discoverable." *In re Bayer AG*, 146 F.ed 188, 195-96 (3d Cir. 1998).

Here, the gravamen of Mr. Masters' case pending before the Jamaican tribunal is that his Gmail account was hacked, resulting in the fraudulent transfer of money from his personal bank account to an unknown person – documents and records from Google would be central to proving that the person who sent the email requesting the transfer of funds was not, in fact, Mr. Masters.

8

**C.  No Jamaican rules or policies bar the discovery sought by Mr. Masters.**

The common law principles which are applied by the Jamaican Supreme Court as well as the Civil Procedure Rules, 2002 which govern civil proceedings in the Jamaican Supreme Court do not prohibit the discovery of any documents obtained from third parties or non-party corporate entities resident in the United States of America (USA) (or elsewhere) by means of a subpoena or similar application sought from a Court in the USA, for use in pending civil proceedings in the Jamaican Supreme Court.

In the case of *Helen Grant Claimant and Google UK Limited [17 May 2006] EWHC (Ch)* (See Exhibit D to Sandza Declaration) the High Court of England and Wales, which is a UK Commonwealth Court that establishes precedent for the Jamaican Supreme Court of Judicature, allowed the use of discovery obtained by a court order from a nonparty to the primary litigation – Google, UK.

Once obtained from the third party by subpoena, the Evidence Act of Jamaica (See Exhibit E to Sandza Declaration) allows for the use of business records, including computer records, to prove the truth of what they state if, among other reasons, the business is located outside of Jamaica. (See Part I, Section 22 and Part IA) To prove such documents were lawfully obtained pursuant to proper court procedure outside of Jamaica, the Evidence Act simply requires that the Order be signed by the foreign judge or sealed and submitted to the Jamaican court. (See Part I, Section 25) Therefore, it is contemplated by the Evidence Code and the Civil Code of Jamaica that trial evidence can be obtained from third parties by proper process outside of Jamaica, and that such evidence can be used in Jamaican trials.

Accordingly, evidence which is discovered from a US based third party by an order of a court of competent jurisdiction in the US compelling disclosure would be admissible in the

9

current action brought by Mr. Masters in the Jamaican Supreme Court, Claim No. 2014/CD 00130. A sealed or signed copy of the order from the Court in the US would also be submitted pursuant to the provisions of section 25 of the Evidence Act.

**D.     Mr. Masters' discovery is narrowly tailored to avoid undue burden on Google.**

Mr. Masters recognizes that "unduly intrusive or burdensome requests may be rejected or trimmed," and accordingly has proposed discovery requests which are narrowly tailored and minimally burdensome. *Intel Corp.*, 542 U.S. at 265. The documents he seeks are discrete, limited in time and scope, and related only to one Gmail account, namely: CarltonMasters1@gmail.com.

- Records showing or reflecting the IP (Internet Protocol) address of any system, device, and/or computer sending, receiving and/or deleting emails from March 5 to March 8, 2014, in the Gmail account with the username/address CarltonMasters1@gmail.com and what actions were performed within Gmail by any such systems, devices, and/or computers.

- Records showing or reflecting any suspicious activity in the Gmail account with username/address CarltonMasters1@gmail.com for the months of February and March, 2014.

- A log of all IP addresses that connected to the Gmail account with the username/address CarltonMasters1@gmail.com from March 5 to March 8, 2014.

- A list of all Google mail servers involved in the transmission of email traffic to and from CarltonMasters1@gmail.com from March 5 to March 8, 2014. The log files should reflect all stages of all email transmissions known to Google.

10

- Digital copies of all emails to and from the Gmail account with the username/address CarltonMasters1@gmail.com from March 5 to March 8, 2014 showing all metadata and associated email headers.

- Records showing or reflecting any unsuccessful password attempts for February 1, 2014 to March 8, 2014 in the Gmail account with the username/address CarltonMasters1@gmail.com.

- Records showing or reflecting any account logins to include the IP addres of those systems, devices, and/or computers connecting to the Gmail account with the username/address CarltonMasters1@gmail.com from March 5 to March 8, 2014.

- Records showing or reflecting any changes in account settings made from February 1, 2014 to March 7, 2014 in the Gmail account with the username/address CarltonMasters1@gmail.com.

- Records showing the date the Gmail account CarltonMasters1@Gmail.com was created.

Because of the limited nature and scope of the requested documents, Google could produce these records with little prejudice or burden.

796140v.2

## CONCLUSION

WHEREFORE, for the foregoing reasons Mr. Masters respectfully requests that this Court enter the attached proposed order permitting Mr. Masters to pursue the discovery as outlined in the attached subpoena from Google, pursuant to 28 U.S.C. Section 1782.

Dated: February ⎩⎩, 2015          Respectfully submitted,

Marion V. Cruz (SBN 244223 )
Email: Marion.Cruz@WilsonElser.com
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
525 Market Street, 17th Floor
San Francisco, California 94105
Telephone: (415) 433-0990
Facsimile: (415) 434-1370

*Attorneys for Plaintiff CARLTON A. MASTERS*

12

## DECLARATION OF CARLTON A. MASTERS

I am Carlton A. Masters, an adult, and I make this Declaration, under penalty of perjury under the laws of California, of my own knowledge.

1.  I seek the Subpoena of Google to gain access to documentation that is in the possession of Google but which contains my information and information about me and my personal Gmail account.

2.  With technical assistance, I attempted to find this information about my self through my Google account, including by going to my Google Dashboard and Google Takeout, but I was not able to learn the information I am seeking.

3.  I do not have a document that states the date on which I initiated my Gmail account, requested in category 9 of the attachment to the Subpoena, because I have deleted my Welcome Email.

4.  I no longer have the documentation described in category 5 of that attachment to the Subpoena because I have deleted those emails.

5.  As a user, I do not have access to the documentation requested in categories 1 through 4, 6, 7 or 8 of the attachment to the Subpoena.

By _____

Carlton A. Masters

**Attachment 2**

13

796140v.2

## DECLARATION OF ELIZABETH B. SANDZA

I am Elizabeth B. Sandza, an adult, and I make this Declaration, under penalty of perjury under the laws of California, of my own knowledge.

1.      I am an attorney licensed to practice in Washington, D.C., Maryland, Delaware, and California (inactive), and I act as the personal attorney for Mr. Carlton A. Masters.

2.      Attached hereto as Exhibit A is a print out of the Google locations page of Google's web site indicating its office locations.

3.      Attached hereto as Exhibit B. is a true and accurate copy of an email I received from Google attorney, Lee-Anne Mulholland, in response to my request for documentation, instructing me to seek a subpoena in this court and indicating that Google would accept such subpoena.

4.      Attached hereto as Exhibit C. is a true and accurate copy of Claim No. 00130, *Carlton A. Masters v. First Global Bank of Jamaica* which is pending in the Supreme Court of Judicature of Jamaica.

5.      Attached hereto as Exhibit D is a true and accurate copy of the opinion in the case of ***Helen Grant Claimant and Google UK Limited [17 May 2006] EWHC (Ch).***

6.      Attached hereto as Exhibit E is a true and accurate copy of Evidence Act

of Jamaica, Part I and Part IA.

I declare under penalty of perjury under the laws of California that the facts cited above are true.

By: _Elizabeth B. Sandza_
Elizabeth B. Sandza

**Attachment 2**



## Company

# Google locations

We've come a long way from the dorm room and the garage. We moved into our headquarters in Mountain View, California—better known as the Googleplex—in 2004. Today Google has more than 70 offices in more than 40 countries around the globe.

Though no two Google offices are the same, visitors to any office can expect to find a few common features: murals and decorations expressing local personality; Googlers sharing cubes, yurts and "huddles"; video games, pool tables and pianos; cafes and "microkitchens" stocked with healthy food; and good old fashioned whiteboards for spur-of-the-moment brainstorming.

Interested in working in one of these locations? <u>We're always looking</u> for great people.

## United States

**<u>Google Inc.</u>**
1600 Amphitheatre Parkway
Mountain View, CA 94043
Phone: +1 650-253-0000
**<u>Google Ann Arbor</u>**
201 S. Division St.
Suite 500
Ann Arbor, MI 48104
Phone: +1 734-332-6500
**<u>Google Atlanta</u>**
Millennium at Midtown
10 10th Street NE
Suite 600



Atlanta, GA 30309
Phone: +1 404-487-9000

**Google Austin**

9606 North MoPac Expressway
Suite 700
Austin, TX 78759
Phone: +1 512-343-5283

**Google Boulder**

2590 Pearl Street
Suite 110
Boulder, CO 80302
Phone: +1 303-245-0086

**Google Cambridge**

355 Main Street, 5th Floor
Cambridge, MA 02142
Phone: +1 617-575-1300

**Google Chicago**

20 West Kinzie St.
Chicago, IL 60654
Phone: +1 312-840-4100

**Google Detroit**

114 Willits Street
Birmingham, MI 48009
Phone: +1 248-593-4000

**Google Orange County**

19510 Jamboree Road
Suite 300
Irvine, CA 92612
Phone: +1 949-794-1600

**Google Kirkland**

747 6th Street South,
Kirkland, WA 98033
Phone: +1 425-739-5600

**Google Los Angeles**

340 Main Street
Los Angeles, CA 90291
Phone: +1 310-310-6000

Visit our Los Angeles office website

**Google Madison**
The Constellation
10 North Livingston St.
2nd Floor
Madison, WI 53703
Phone: +1 608-669-9600
**Google New York**
76 Ninth Avenue
4th Floor
New York, NY 10011
Phone: +1 212-565-0000

Visit our New York office website

**Google New York**
Chelsea Market Space
(mail cannot be received at this address)
75 Ninth Avenue
2nd and 4th Floors
New York, NY 10011
Phone: +1 212-565-0000
**Google Pittsburgh**
6425 Penn Ave.
Suite 700
Pittsburgh, PA 15206
Phone: +1 412-345-6700
**Google Reston**
1818 Library Street
Suite 400
Reston, VA 20190
Phone: +1 202-370-5600
**Google San Francisco**
345 Spear Street
Floors 2-4
San Francisco, CA 94105
Phone: +1 415-736-0000

**<u>Google Seattle</u>**
651 N. 34th St.
Seattle, WA 98103
Phone: +1 206-876-1800
**<u>Google Washington, D.C.</u>**
25 Massachusetts Avenue NW.
Suite 900
Washington, DC 20001
Phone: (202) 346-1100

# Asia Pacific

## Australia

**Google Sydney**
Google Australia Pty Ltd.
Level 5, 48 Pirrama Road,
Pyrmont, NSW 2009
Australia
Phone: +61 2 9374 4000
Fax: +61 2 9374 4001

## China Mainland

**Google Beijing**
Tsinghua Science Park Bldg 6
No. 1 Zhongguancun East Road
Haidian District
Beijing 100084
Phone: +86-10-62503000
Fax: +86-10-62503001
**Google Guangzhou**
L30, Unit 3007, Teemtower, Teemmall,
208 Tianhe Road, Tianhe District,
Guangzhou, 510620
**Google Shanghai**
60F, Shanghai World Financial Center

100 Century Avenue, Pudong New Area
Shanghai 200120, China
Phone: +86-21-6133-7666
Fax: +86-21-6133-7205

## Hong Kong

### Google Hong Kong
Suite 2501
Tower 2, Times Square
1 Matheson Street,
Causeway Bay, Hong Kong
Phone: +852-3923-5400
Fax: +852-3923-5401

## India

### Google Bangalore
Google India Pvt. Ltd
No. 3, RMZ Infinity - Tower E
Old Madras Road
3rd, 4th, and 5th Floors
Bangalore, 560 016
India
Phone: +91-80-67218000
### Google Gurgaon
Google India Pvt Ltd
Unitech Signature Tower-II
Tower-B, Sector-15
Part-II Village Silokhera
Gurgaon 122001
India
Phone: +91-12-44512900
### Google Hyderabad
Google India Pvt. Ltd
Block 1
DivyaSree Omega

Survey No. 13
Kondapur Village,
Hyderabad
Andhra Pradesh, India
Phone: +91-40-6619-3000
**Google Mumbai**
Google India Pvt Ltd
1st Floor
3 North Avenue
Maker Maxity
Bandra Kurla Complex
Bandra East
Mumbai, 400 051
India
Phone: +91-22-6611-7150

## Japan

**Google Japan**
Roppongi Hills Mori Tower
PO Box 22, 6-10-1 Roppongi
Minato-ku, Tokyo 106-6126
Phone: +81-3-6384-9000
Fax: +81-3-6384-9001

## Korea

**Google Seoul**
Google Korea LLC.
22nd Floor, Gangnam Finance Center
152 Teheran-ro, Gangnam-gu
Seoul 135-984
South Korea
Phone: +82-2-531-9000
Fax: +82-2-531-9001

## Malaysia

**Google Malaysia Sdn Bhd**
Quill 7, No. 9
Jalan Stesen Sentral 5
50470 Kuala Lumpur
Malaysia

## New Zealand

**Google Auckland**
Level 27, PWC Tower
188 Quay Street
Auckland 1010
New Zealand

## Singapore

**Google Singapore**
Google Asia Pacific Pte. Ltd.
8 Marina View
Asia Square 1 #30-01
Singapore 018960
Phone: +65 6521-8000
Fax: +65 6521-8901

## Taiwan

**Google Taipei**
Level 73, Taipei 101 Tower
7 Xinyi Road, Sec. 5, Taipei, 110
Taiwan
Phone: 886 2 8729 6000
Fax: 886 2 8729 6001

## Thailand

**Google (Thailand) Company Limited**
14th Floor, Park Ventures Ecoplex
57 Wireless Road
Bangkok 10330
Thailand

# Africa

## Kenya

**Google Kenya Ltd.**
7th Floor, Purshottam Place
Westlands Road,
P.O. Box 66217 - 00800
Westlands
Nairobi, Kenya
Phone: +254 20 360 1000
Fax: +254 20 360 1100

## Ghana

**Google Ghana**
GNAT Heights
30 Independence Ave
North Ridge, Accra
Ghana

## Nigeria

**Google Nigeria**
3rd Floor, Mulliner Towers
39 Kingsway Road, Ikoyi
Lagos, Nigeria

## Senegal

**Google Senegal**
Immeuble Azur 15
12 Boulevard Djily MBAYE
BP 50555 Dakar, Senegal

## South Africa

**Google South Africa**
Ground Floor, Twickenham Building
The Campus
Cnr Main & Sloane Street
Bryanston, Johannesburg
02021 South Africa

## Uganda

**Google Uganda**
CourseView Towers, 7th Floor,
Plot 21, Yusuf Lule Road
Kampala

# Europe

## Belgium

**Google Belgium n.v.**
Chaussée d'Etterbeek 176-180
Etterbeeksesteenweg 176-180
1040 Brussels
Belgium

## Czech Republic

**Google Prague**
Stroupežnického 3191/17
150 00 Prague 5
Czech Republic

## Denmark

**Google Aarhus**
Google Denmark ApS
Aabogade 15
8200 Aarhus N
Denmark
**Google Copenhagen**
Google Denmark ApS
Sankt Petri Passage 5, 2nd floor
1165 Copenhagen K
Denmark

## Finland

**Google Helsinki**
Google Finland Oy
Helsinki

## France

**Google Paris**
8 Rue de Londres
75009 Paris
France
Phone: +33 (0)1 42 68 53 00
Fax: +33 (0) 1 42 68 53 01

## Germany

**Google Berlin**
Unter den Linden 14
10117 Berlin
Germany
Phone: +49 30 303986300
Fax: +49 30 69088154
**Google Hamburg**
Google Germany GmbH

ABC-Strasse 19
20354 Hamburg
Germany
Phone: +49 40-80-81-79-000
Fax: +49 40-4921-9194
**Google Munich**
Google Germany GmbH
Dienerstrasse 12
80331 Munich
Germany

## Greece

**Google Athens**
7 Fragoklissias St, 2nd floor
Marousai
Athens 151 25, Greece

## Hungary

**Google Budapest**
Árpád Fejedelem útja 26-28.
Budapest, Hungary 1023

## Ireland

**Google Dublin**
Google Ireland Ltd.
Gordon House
Barrow Street
Dublin 4
Ireland
Fax: +353 (1) 436 1001

## Italy

**Google Milan**
Via Federico Confalonieri 4

20124 Milano
Italia
Phone: +39 02-36618 300
Fax: +39 02-36618 301

## Netherlands

**Google Amsterdam**
Claude Debussylaan 34
Vinoly Mahler 4
Toren B, 15th Floor
Amsterdam, Netherlands
1082 MD, Netherlands
Phone: +31 (0)20-5045-100
Fax: +31 (0)20-524-8150

## Norway

**Google Oslo**
Google Norway AS
Henrik Ibsens gate 100
0255 Oslo
Phone: +47 23001238
Fax: +47 23001231

## Poland

**Google Kraków**
Rynek Glowny 12, II floor
31-042 Kraków
Poland
Phone: +48 (12) 68 15 300
Fax: +48 (12) 68 15 362
**Google Warsaw**
Warsaw Financial Center
Emilii Plater 53
00-113 Warszawa

Poland
Phone: +48 22 207 19 00
Fax: +48 22 207 19 30
**Google Wrocław**
Bema Plaza, V pietro
Plac Gen. Jozefa Bema nr 2
50-265 Wroclaw
Poland
Phone: +48 (71) 73 41 000
Fax: +48 (71) 73 41 051

## Portugal

**Google Portugal**
Avenida da Liberdade, 110
1269-046 Lisboa, Portugal

## Russian Federation

**Google Moscow**
OOO Google
7 Balchug st.
Moscow 115035
Russian Federation
Phone: +7-495-644-1400
Fax: +7-495-644-1401
**Google St. Petersburg**
Alia Tempora
ul. Mayakovskogo Bldg 3B
Floors 8-9
Saint Petersburg, Russian Federation,
191025
Phone: +7 (812) 313-4800
Fax: +7 (812) 313-4801

## Slovakia

**<u>Google Slovakia</u>**
Karadžičova 8/A
Bratislava 82108
Slovak Republic

## Spain

**Google Madrid**
Torre Picasso
Plaza Pablo Ruiz Picasso 1
Madrid 28020
Phone: +34 91-748-6400
Fax: +34 91-748-6402

## Sweden

**Google Stockholm**
Google Sweden AB
Kungsbron 2
111 22 Stockholm

## Switzerland

**Google Zürich**
Brandschenkestrasse 110
8002 Zürich
Switzerland
Phone: +41 44-668-1800
Fax: +41 44-668-1818

## Ukraine

**Google Ukraine**
25B, Sagaydachnogo str.
Kyiv 04070
Ukraine

## United Kingdom

### Google London
Google UK Ltd
Belgrave House
76 Buckingham Palace Road
London SW1W 9TQ
United Kingdom
Phone: +44 (0)20-7031-3000
Fax: +44 (0)20-7031-3001

### Google London
Google UK Ltd
123 Buckingham Palace Road
London SW1W 9SH
United Kingdom

### Google London
Google UK Ltd
1-13 St Giles High Street
London WC2H 8AG
United Kingdom

### Google Manchester
Google UK Ltd
Peter House
Oxford Street
Manchester
M1 5AN

# Canada

### Google Montreal
1253 McGill College
Montreal, Quebec, H3B 2Y5
Phone: +1 514-670-8700

### Google Toronto
12th Floor
111 Richmond Street West

Toronto, Ontario M5H 2G4
Phone: +1 416-915-8200
**Google Waterloo**
151 Charles Street West
Suite 200
Kitchener, Ontario, N2G 1H6
Phone: +1 519-880-2300

# Latin America

## Argentina

**Google Buenos Aires**
Dock del Plata
Alicia Moreau de Justo 350, 2nd floor
Buenos Aires, C1107AAH
Phone: +54-11-5530-3000
Fax: +54-11-5530-3001

## Brazil

**Google Belo Horizonte**
Google Brasil Internet LTDA
Av. Bias Fortes
nº 382 6th floor, Lourdes
Belo Horizonte
30170-010
Brazil
Phone: +55-31-2128-6800
Fax: +55-31-2128-6801

**Google Sao Paulo**
Google Brasil Internet Ltda.
Av. Brigadeiro Faria Lima, 3477 - 18º andar
São Paulo, 04538-133
Brazil
Fax: +55-11-2395-8401

## Colombia

**Google Colombia**
Carrera 11A #94-45, Floor 8th
Bogotá, Colombia
Phone: +57 (1) 5939400
Fax: +57 (1) 5939401

## Mexico

**Google Mexico**
Paseo de la Reforma #115, Piso 22
Col. Lomas de Chapultepec
México D.F. 11000, México
Phone: +52 55-5342-8400
Fax: +52 55-5342-8401

# Middle East

## Egypt

**Google Egypt LLC**
47 Office Building
Section 1
City Centre
New Cairo
Egypt

## Israel

**Google Haifa**
Building 30
MATAM, Advanced Technology Center
PO Box 15096
Haifa, 3190500
Israel

Phone: 972-74-746-6245
Fax: 972-74-746-6201
**Google Tel Aviv**
Google Israel Ltd.
98 Yigal Alon St.
Electra Tower, Floor 29
Tel-Aviv, 6789141
Israel
Phone: 972-74-746-6453
Fax: 972-3-761-7171

## Turkey

**Google Istanbul**
Google Advertising and Marketing Ltd Sti
Tekfen Tower
Buyukdere Caddesi No: 209 Kat:9
34394 Istanbul

## United Arab Emirates

**Google UAE**
Dubai Internet City
Building 4, office 306
P.O Box 502966
Phone: +971 4 4509500
Fax: +971 4 4509523

## Sandza, Elizabeth B.

**From:** Lee-Anne Mulholland [lmulholland@google.com]
**Sent:** Wednesday, November 26. 2014 1:19 PM
**To:** Sandza, Elizabeth B.
**Subject:** Re: A Gmail legal issue

**Follow Up Flag:** Follow up
**Flag Status:** Flagged

No problem! Glad it helps. Happy Thanksgiving.

On Wed, Nov 26, 2014 at 10:08 AM, Sandza. Elizabeth B. <Elizabeth.Sandza@wilsonelser.com> wrote:

Thank you so much. This is very helpful new information to me. I will proceed accordingly.

Elizabeth B. Sandza
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
700 11th Street. NW. Suite 400
Washington. D.C. 20001
202.626.9091 (Direct)
202.494.8811 (Cell)
202.626.7660 (Main)
202.628.3606 (Fax)
elizabeth.sandza@wilsonelser.com

**From:** Lee-Anne Mulholland [mailto:lmulholland@google.com]
**Sent:** Wednesday, November 26, 2014 1:05 PM
**To:** Sandza, Elizabeth B.
**Subject:** Re: A Gmail legal issue

Ms. Sandza:

A

s your partner probably told you

and I explained when I allowed her to give you my contact information,

my team is not th

e team that

handles



the preservation and production of user data. The team for whom you received an alias is the correct team. Nevertheless, albeit I suspected what the response would be, I forwarded your request to that

1

team. Below is the response you would have received if you had contacted them yourself. I wanted to let you know, that albeit I understand your desire to save the time and expense involved with a subpeona, access to gmail/user data is obviously something we take very seriously and thus our company policies dictate when and how we produce information. I hope this helps.

Thanks,

Lee-Anne


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

[From our User Data Team]

The information you are requesting is subject to state and federal laws. In accordance with those laws, it is Google's policy to only provide subscriber information pursuant to a valid third party subpoena or other appropriate legal process.


We accept legal process by personal service. We are unable to accept service by mail or any form of electronic service at this time. Google accepts subpoenas issued from Santa Clara Superior Court or the U.S. District Court for the Northern District of California via personal service on the Custodian of Records for Google Inc. at 1600 Amphitheatre Parkway, Mountain View, California, 94043.


Google believes it is important for you to have the controls you need to manage your data online. You can access information that Google Inc. has about you through your Google account, or through the products interfaces themselves.


In addition you can use Google Dashboard (www.google.com/dashboard) to view a summary of the data associated with your account and Google Takeout (https://www.google.com/takeout) allows you to download a copy of data stored within your account. You need to be signed in to your account to access Google Dashboard and Google Takeout. This helps to protect your privacy by ensuring that only you, as the authorized account holder, will obtain access to the information in the account.


In the normal course, Google does not retain deleted emails longer than 30-60 days from the date they were deleted. As such, Google is unlikely to have documents responsive to requests for deleted emails


On Nov 26, 2014 9:33 AM, "Sandza, Elizabeth B." <Elizabeth.Sandza@wilsonelser.com> wrote:

Dear Ms. Mulholland:

I received your contact information from my colleague Janet Tolbert in Wilson Elser's Dallas office. I had previously tried to contact Google legal, as suggested by another contact, Ben Blink of Google's lobbying office here in Washington, but received no response from the generic address.

I have a client whose Gmail account was hacked and the hacker, posing as my client, instructed First Global Bank of Jamaica to wire $201,000 to the hacker's personal account in Taiwan. First Global did so and now will not reimburse or even compromise the matter with my client, so he has filed a law suit against First Global in Jamaica. For that action, my client needs to be able to establish to the court that it was not he who used his account to give the wire transfer direction to First Global. To do that, I will need a technical explanation from someone at Google. Also, my client did not retain electronic copies of the emails that were used for this fraud, although he did print them and has retained those copies. To establish what happened and where in the world the hacker operated, I understand we need access to the electronic emails. I would like to discuss with Google how to obtain those copies.

Of course, I could subpoena all of this information, but I think that would be a waste of time and money for both Google and my client. I was afraid that I would have to open a matter in US federal court and issue a subpoena just to get someone's attention at Google, so I am most pleased to have the connection to you.

I would so appreciate it if you could call or respond so that we could discuss this matter.

Elizabeth B. Sandza
Wilson Elser Moskowitz Edelman & Dicker LLP
700 11th Street, NW, Suite 400
Washington, D.C. 20001
202.626.9091 (Direct)
202.494.8811 (Cell)
202.626.7660 (Main)
202.628.3606 (Fax)
elizabeth.sandza@wilsonelser.com

CONFIDENTIALITY NOTICE: This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system.

For further information about Wilson, Elser, Moskowitz, Edelman & Dicker LLP, please see our website at www.wilsonelser.com or refer to any of our offices.

Thank you.



**CLAIM FORM**
FORM 1 [Rule 8.1(3)]



NOV 14 2014

IN THE SUPREME COURT OF JUDICATURE OF JAMAICA

IN THE COMMERCIAL COURT

CLAIM NO.    2014/CD  OO130

BETWEEN    CARLTON MASTERS    CLAIMANT

AND    FIRST GLOBAL BANK LIMITED    DEFENDANT

1.  At all material times the Claimant is and was a Businessman who has been appointed as an Ambassador for Jamaica and resides in Jamaica at 11 Waterworks Avenue, Unit 1, Kingston 8 in the parish of Saint Andrew and is and was at all material times a long standing customer of the Defendant for a period in excess of seven years.

2.  At all material times, the Defendant is and was a commercial Bank carrying on business at its Head Office at 2 Saint Lucia Avenue, 3rd Floor, Kingston 5 in the parish of Saint Andrew, inter alia .

3.  At all material times, the Claimant operated a number of personal bank accounts with the Defendant, including two (2 )Jamaican dollar accounts and two (2) United States Dollar accounts.

4.  On or about March 7, 2014, without verifying the authenticity of an email instruction it received purportedly from the Claimant but without the Claimant's authorization, the Defendant, with grossly negligent disregard, wired US $201,000 US from one of the Claimant's United States Dollar accounts to an individual named Chen Wei Lung in Taiwan. As a result, the Claimant lost $201,000 US, and the Defendant has failed and or refused to repay the same to the Claimant.

### AND THE CLAIMANT CLAIMS:

1.  A Declaration that the Defendant has acted negligently, in breach of its duty of care and its fiduciary duty owed to the Claimant;

2.  An Order requiring the Defendant to refund to the Claimant, the sum of US$201,000.00.

**EXHIBIT**
bibbler
C

3. Commercial Interest compounded at monthly rests on the sum of US$201,000.00 for the period March 7, 2014 to the date of payment;

4. Any further relief that this Honourable Court deems just.

## CERTIFICATE OF TRUTH

I, SUZANNE RISDEN FOSTER Attorney at law certify that the Claimant CARLTON MASTERS states that he believes that the facts contained in this Claim Form are true and this certificate is given on the Claimant's behalf and on his instructions. The Claimant cannot give the certificate as he is presently overseas.

Dated the 18 of November 2014

.................................................
**SUZANNE RISDEN-FOSTER**
ATTORNEY-AT-LAW

**NOTICE TO THE DEFENDANT**

See the Notes in Form 1A served with this Claim Form.

This Claim Form must contain or have served with it either a Particulars of Claim or a copy of a Court Order entitling the Claimant to serve the Claim Form without a Particulars of Claim.

If you do not complete the Acknowledgement of Service served on you with this Claim Form and deliver or send it to the registry (address below) so that it is received within FOURTEEN days of service of the Claim Form on you, the Claimant will be entitled to apply to have judgment entered against you. See Rules 9.2 (5) and 9.3 (1).

The Form of Acknowledgement of Service may be completed by you or an Attorney-at-Law acting for you.

You should consider obtaining legal advice with regard to this Claim.

This Claim Form has no validity if it is not served within six months of the date below unless it is accompanied by an Order extending the same. See Rule 8.14 (1).

The Registry is at King Street, Kingston, telephone numbers (876) 922-8300-9, fax (876) 967-0669. The office is open between 9:00 am and 4:00 pm. Mondays to Thursdays and 9:00 am to 3:00 pm on Fridays, except on Public Holidays.

Dated the 13th day of *March* 2014.

The Claimant's address for service is that of his Attorneys-at-Law at 11A Swallowfield Road, Kingston 5 with telephone numbers (876) 926-1880-9, fax (876) 926-5012.

Filed by **Messrs. Grant, Stewart, Phillips & Co.**, of 11A Swallowfield Road, Kingston 5, Attorneys-at-Law for and on behalf of the Claimant herein. Telephone Nos: 926-1880-9, Fax No: 926-5012 (Attention: Mrs. Denise E. Kitson – Certificate No. 2351).

**PARTICULARS OF CLAIM**

IN THE SUPREME COURT OF JUDICATURE OF JAMAICA

IN THE COMMERCIAL COURT

CLAIM NO.  |2014/CD $OO$ $130$ |



BETWEEN    **CARLTON MASTERS**                          **CLAIMANT**

AND        **FIRST GLOBAL BANK LIMITED**                **DEFENDANT**

1. At all material times the Claimant is and was a Businessman who has been appointed as Ambassador for Jamaica and resides in Jamaica at 11 Waterworks Avenue, Unit 1, Kingston 8 in the parish of Saint Andrew and is and was at all material times a long standing customer of the Defendant for a period in excess of seven years.

2. At all material times, the Defendant is and was a commercial Bank carrying on business at its Head Office at 2 Saint Lucia Avenue, 3rd Floor, Kingston 5 in the parish of Saint Andrew, inter alia .

3. At all material times, the Claimant operated a number of personal bank accounts with the Defendant, including two (2 )Jamaican dollar accounts and two (2) United States Dollar accounts.

4. On or about March 7, 2014, without verifying the authenticity of an email instruction it received purportedly from the Claimant and without his Claimant's authorization, the Defendant, with grossly negligent disregard, wired US $201,000 US from one of the Claimant's United States. Dollar accounts to an individual named Chen Wei Lung in Taiwan. As a result, the Claimant lost $201,000 US, and the Defendant has failed and or refused to repay the same to the Claimant.

5. The Claimant says that the Claimant did not know Chen Wei Lung, and he did not request or authorize the wire transfer to Chen Wei Lung.

6. Further the Defendant should have been put on notice that the email instruction it received and acted on without checking its validity was fraudulent for the following reasons inter alia:

   a. The e-mail request referred to an account in the name of *Carl Masters* and not the name *Carlton Masters* by which the Claimant operates the aforesaid 4 Accounts.

1

b. The email instruction to the Defendant was not sent from the Claimant's email account that he had twice identified to the Defendant as his authorized banking email address and used regularly for his banking activity.

c. The email instruction to the Defendant was quarantined by the Defendant's spam filter.

d. The Claimant had never, in his seven year relationship with the Defendant, wired any sum of money to Taiwan, known in the banking industry to be center of Internet banking fraud.

e. The amount wired, of US $201,000.00 US, was uncharacteristically large for the Claimant to be sending, and was more than a Bank employing sound international banking standards ought to send without double verification.

f. Claimant did not have US $201,000.00 in his Jamaican dollar account from which the Defendant was instructed to wire the said sum.

g. It was contrary to reason and illogical for the Claimant to request, as the fraudulent email did, that US $201,000.00 US Dollars be sent from his Jamaican Dollar account when he had two U.S. Dollar accounts with adequate funds and from which there would be no foreign exchange fees.

7. The averments summarized in paragraphs 4 to 6 hereof inclusive are further particularized below.

## The Banking Relationship

8. After the commencement of the Banker/Customer relationship between the Claimant and the Defendant, the Claimant instructed the Defendant that, pursuant to his contracting for the Defendant's On-Line banking programme, known as "Global Access" in order to operate his bank accounts then maintained by the Claimant with the Defendant from overseas, his designated email address would be: *masterscarl@hotmail.com* (hereinafter referred to as "the Hotmail Address").

9. The Claimant avers that at the same time, he also operated a *gmail* email address for mainly non-banking matters. However at no time during his Customer/Banking relationship with the Defendant did the Claimant issue counter instructions to the Defendant to change his designated email address from the Hotmail Address. The Claimant further says that the specific instructions designating his Hotmail Address to be used for all his banking instructions which he issued to the Defendant were again confirmed by email dated November, 15 2013, prior to the chain of events hereinafter set out.

2

10. In or about March of 2013, the Claimant signed up for the Defendant Bank's On-Line email, telephone and fax service and that service did not request that the Claimant re-designate an alternate email address for the purpose of transacting business using the On-Line Global Access programme offered by the Defendant.

11. The Claimant further avers that since enrolling in the Defendant's On-Line banking service in March of 2013, using his designated Hotmail email address, he has conducted several banking transactions using the said Hotmail Account. Between November 15, 2013 and March 7, 2014, the Claimant issued approximately twenty (20) instructions to the Defendant from his Hotmail Account and received fifteen (15) communications from the Defendant to the said Hotmail Account.

12. Sometime in 2013, the Claimant at the request of the Defendant executed an *"Authority and Indemnity for Instructions by Email, Telephone and Fax"* (hereinafter referred to as the "Indemnity"), which was prepared by the Defendant and duly executed by the Claimant and witnessed by his Attorney-at-Law on or about 15th March, 2013.

13. It was an express and/or implied term of the said Indemnity and/or of the Agreement between the Claimant as Customer and the Defendant as Banker that the Defendant would:

    a. Observe reasonable skill and care in and about carrying on the Claimant's instructions by way of fax, telephone and/or email in conducting banking transactions with respect to his Jamaican and United States Dollar Accounts held with the Defendant;

    b. Adhere to standard banking practice and custom in exercising its duty of care in carrying out the Claimant's instructions;

    c. Conduct its Banker/Customer relationship with the Claimant in keeping with its fiduciary duties owed to the Claimant.

14. Further, upon signing up for the Defendant's On-Line service the Claimant also made it his practice when initiating a banking transaction by email, to confirm his transaction by telephone call to a representative of the Defendant Bank. This practice on the part of the Claimant was also conducted by the Defendant's representatives, who contacted the Claimant by telephone to confirm and verify the Claimant's banking transactions conducted through his *Hotmail* address.

## The Unauthorized Transaction

15. On or about March 7, 2014 at approximately 5:30 p.m., the Claimant discovered that the sum of US$201,000.00 had been transferred from one of his United States Dollar Accounts to a

beneficiary account in the name of Chen Wei Lung numbered 1322-879-002637 purportedly held at E. Sun Commercial Bank in Taiwan, both of whom are unknown to the Claimant, and that the said transfer of funds from the Claimant's account was done by the Defendant Bank without the express written or oral authorization from the Claimant.

16. The Claimant on discovering the unauthorized transaction immediately contacted the Defendant in relation to the same and was advised by the Defendant's representative, that an employee of the Defendant, had earlier that day received email instructions which purportedly were issued from an email address in the Claimant's name instructing the Defendant to transfer the said sum of US$201,000.00 from one of the Claimant's Jamaican Dollar Accounts.

17. The Claimant was further informed by the Defendant that the transfer had been approved by the Defendant's employee and Assistant Manager of Operations, Ms. Wendy Ansine, and that instead of employing the usual established practice to verify the authenticity of the request, the Defendant's agents and/or employees had advised the requesting party (the fraudster) by email of the lack of sufficient funds in the Claimant's said Jamaican Dollar Account and suggested the transfer of the said sum of US$201,000.00 from the Claimant's United States Dollar Account. The Defendant thereby revealed to the fraudster information which was hitherto unknown to the fraudster.

18. The emails from the *gmail* address received from the Defendant indicate that the Defendant's employees had on-line conversations with the fraudster and accessed the Claimant's on-line bank account to check its balance between 5:47 a.m. and 8:56 a.m. on March 7, 2014, before the Defendant even opened its doors for regular daily business.

19. Further at no time did the Defendant's employees seek or receive confirmation from the Claimant in relation to the transaction by way of the Claimant's designated *Hotmail* account.

20. At no time, did the Claimant issue verbal and/ or written authorization to the Defendant whether by email, fax, letter or phone call instructing the Bank to transfer the said sum of US$201,000.00 from either his Jamaican Dollar Account or his United States Dollar Account to the recipient of the said sum.

## Reversing the Transaction

21. The Claimant requested that the Defendant reverse the wire transfer and the Defendant agreed but has failed to do so. .

22. Subsequently, the Defendant reinstated the Claimant's account by crediting the Claimant's account with the sum deducted but thereafter wrongfully removed the replaced sum. The

Defendant had no such instructions or authorization and is not entitled to rely on the Indemnity for this second removal.

23. Upon discovery of the foregoing the Claimant demanded the return of his monies unlawfully and/or negligently transferred from his account but the Defendant has failed or refused to refund the same.

### Breach of the Claimant's Instructions, breach of Duty and Gross Negligence

24. The Claimant asserts that the Defendant acted unlawfully and in breach of the instructions received from the Claimant as set out in paragraph 8 hereof.

25. Further, the Defendant's agents and/or employees in breach of its duty of care, failed, refused and/or neglected to verify the transaction with the Claimant and to confirm his instructions to wire the said sum to the account at E. Sun Commercial Bank used by the fraudster, in accordance with the usual verification process employed by both the Claimant and the Defendant when instructions have been communicated by the Claimant using his authorized email account.

26. The Claimant states that the email on which the Defendant purports to rely as constituting instructions from the Claimant emanated from a Gmail address was not at any time, the Claimant's Hotmail email address which had been designated between the parties for electronic transactions as expressly communicated to the Defendant's officer, Ms. Wendy Ansine by the Claimant on November 15, 2013, as his instructions for the conduct of his banking transactions with the Defendant.

27. The Claimant asserts that the foregoing actions on the part of the Defendant Bank amount to gross negligence and/or breach of its duty of care and/or are in breach of the implied and/or express fiduciary duties owed to the Claimant by reason of its Banker/Customer relationship with the Claimant.

### PARTICULARS OF NEGLIGENCE AND/OR BREACH OF FIDUCIARY DUTIES OWED BY THE DEFENDANT TO THE CLAIMANT

a. Acting on e-mail instructions referring to an account in the name of Carl Masters and not the name Carlton Masters by which the Claimant only operates his aforesaid Accounts.

5

b. Failing to observe that the fraudulent email instructions came from a *gmail* account and not from the Claimant's authorized *Hotmail* Account

c. Acting on the email instruction sent to the Defendant notwithstanding the fact that the same had been quarantined by the Defendant's spam filter.

d. Communicating with the fraudster the fact that the account from which the funds were requested was a Jamaican Dollar account which did not have sufficient funds and suggesting a transfer from an alternative US$ account.

e. Failing to be put on notice of the patent irregularities and discrepancies so that it could have taken the appropriate action to verify the authenticity of the instructions instead of facilitating the unlawful disbursement and transfer based on fraudulent instructions.

f. Failing to take steps to communicate with the Claimant on the patent discrepancies in the email correspondence prior to transferring the funds.

g. Transferring the Claimant's funds without conducting the usual practice established between the parties, and which is standard banking practice, of verifying the instructions verbally or otherwise with the Claimant.

h. Wrongfully removing for a second time from the Claimant's account, the said sum once it had been rightly restored to his account.

28. AND the Claimant claims the following::

    i.    A Declaration that the Defendant has acted negligently, in breach of its duty of care and its fiduciary duty owed to the Claimant;

    ii.    An Order requiring the Defendant to refund to the Claimant, the sum of US$201,000.00;

    iii.    Commercial Interest compounded at monthly rests on the sum of US$201,000.00 for the period March 7, 2014 to the date of payment;

    iv.    Costs with Special Certificate for two (2) Counsel;

    v.    Any further relief that this Honourable Court deems just.

## CERTIFICATE OF TRUTH

I, SUZANNE RISDEN FOSTER Attorney at law, certify that the Claimant CARLTON MASTERS states that he believes that the facts contained in this Particulars of Claim are true and this certificate is given on the Claimant's behalf and on his instructions. The Claimant cannot give the certificate as he is presently overseas.

...................................
SUZANNE RISDEN FOSTER

**SETTLED:** **DENISE E. KITSON Q.C. & SUZANNE RISDEN-FOSTER**

**(IN CONSULTATION)**

**DATED THE 13TH DAY OF NOVEMBER, 2014**

FILED by MESSRS. GRANT, STEWART, PHILLIPS & CO. of 11A Swallowfield Road, Kingston 5 in the Parish of Saint Andrew, Attorneys-at-Law for and on behalf of the Claimant herein; Telephone Nos: (876)-926-1880 – 0; Fax No: (876)-926-5012; Attention: Mrs. Denise E. Kitson Q.C – Attorney No: 2351

7



[Home] [Databases] [World Law] [Multidatabase Search] [Help] [Feedback]

# England and Wales High Court (Chancery Division) Decisions

You are here: BAILII >> Databases >> England and Wales High Court (Chancery Division) Decisions >> Grant v Google UK Ltd. [2005] EWHC 3444 (Ch) (17 May 2006)
URL: http://www.bailii.org/ew/cases/EWHC/Ch/2005/3444.html
Cite as: [2005] EWHC 3444 (Ch)

[New search] [Printable RTF version] [Help]

**Neutral Citation Number: [2005] EWHC 3444 (Ch)**

Case No.

IN THE HIGH COURT OF JUSTICE
CHANCERY DIVISION

Royal Courts of Justice
Strand
London WC2A 2LL
17 may 2006

B e f o r e

**MR JUSTICE RIMER**

---

**HELEN GRANT**

Claimant

- and -

**GOOGLE UK LIMITED**

Defendant

---

Digital Transcript of Wordwave International Limited
183 Clarence Street Kingston-Upon-Thames Surrey KT1 1QT
Tel No: 020 8974 7300 Fax No: 020 8974 7301
(Official Shorthand Writers to the Court)

---

HTML VERSION OF JUDGMENT

---

Crown Copyright ©

EXHIBIT

tebbler

D

MR JUSTICE RIMER:

1. This is an application notice issued on 10 May 2006 by Helen Grant, who sues as the trustee of the Individuals Self-Discovery Trust. The notice seeks relief against the respondent, Google UK Limited, of a Norwich Pharmacal nature (See Norwich Pharmacal Co and others v Customs & Excise Commissioners [1974] AC 133).

2. The particulars of claim, supported by a statement of truth made by Ms Grant, were issued on 10 May 2006. They allege that the Trust owns the copyright of a work called Unlock Reality, which is due to be published in the United Kingdom in September 2006 and in the United States in October 2006. The trigger for this application is the Trust's discovery that, without its consent, an earlier draft of the work has been made available on the internet. It has been made so available for free download through an advertisement generated by the Google internet search engine, which leads (or at least did lead) to a website with the domain name of Realityunlocked.com. The advertisement used the name of the Trust's text, namely Unlock Reality. The Trust's investigations into the matter led it to discover that the website had been registered through a company called Domains By Proxy, which is said to specialise in the cloaking of the identity of domain owners. Requests by the Trust have failed to reveal the identity of the owners of the website.

3. The Trust concluded that Google would have the contact details of the advertiser responsible for the advertisement whom the Trust, not unreasonably, concludes are the persons committing what it regards as an infringement of its copyright. Unless, however, it can discover the identity of the advertiser, it cannot hope to prevent further such infringements of its copyright, although (as I understand the evidence) it appears that following complaints the offending website has been suspended.

4. The Trust has sought Google's aid in the identification of the advertiser but it has declined to comply, saying it cannot do so for reasons which the evidence does not explain explicitly, although it may be because of a perceived duty of confidentiality to its customers. Google has, however, suggested that the Trust should apply for the present Order, which is one requiring Google to make the requested disclosure.

5. The proceedings and application notice have been served on Google and Ms Cindy Yip of Google's legal department has told the Trust that Google would not oppose the present application, provided that the Trust abandoned the prohibitory injunction it has sought in paragraph (1) of the application notice. The Trust has agreed to do so and I am not therefore concerned with giving or not giving relief under that paragraph.

6. For reasons shortly explained, I am satisfied that this is a case in which Google has become mixed up in the apparent wrongdoing of others and that it is in a position to disclose the identity of those others to the Trust. I will make an Order accordingly. I consider, however, as is usual in these applications that the claimant must undertake to pay Google's proper costs of providing the requested information.

# THE EVIDENCE ACT

## ARRANGEMENT OF SECTIONS

1. Short title.

PART I.  *Competency of Witnesses*

2. Removal of incapacity to testify from crime or interest.
3. Parties to record may be examined as witnesses.
4. Husbands' and wives' evidence against each other.
   Exceptions.
5. Evidence of access.
6. Not compellable to disclose communication made during marriage.
7. In action for breach of promise of marriage, how far parties competent to give evidence.
8. [*Repealed by Act 12 of 1995.*]

*Accused Persons' competency to give evidence*

9. Accused persons and their wives competent witnesses.
10. Where accused himself is his only witness.
11. Right of reply does not accrue to prosecution because accused has given evidence.
12. When wife or husband of accused may be called as witness for prosecution.
13. Sections 9 to 12 apply to all criminal proceedings.
14. Sections 9 to 12 apply to courts-martial if so provided.

*Impeaching Credit, Cross-examination of Witness*

15. Impeaching credit of witness when and how allowed to be done by party producing him.

EXHIBIT

E

16. How and when witness' evidence on cross-examination may be contradicted.

17. Cross-examination as to statements reduced to writing.

18. Questions whether witness has been convicted of felony or misdemeanour allowable.

*Proof of Written Instrument and Comparison of Handwriting*

19. Proof of instruments in writing.

20. Comparison of handwriting.

### *Application of Sections*

21. Sections 15 to 20 apply to courts of civil and criminal judicature.

### *Admissibility of various Documents and Copies*

22. Official or public documents, etc.

23. Judicial notice to be taken of signature of Judges of Superior Courts.

24. Private Laws and Acts and minutes of Legislature.

25. Acts of State, etc.

26. Registers of ships.

27. Certificate of conviction or acquittal.

28. Examined copies of contents of books of public nature.

29. Power of Court to impound documents.

### *Penalty for False Certificate*

30. Wilfully certifying false certificate.

### *Power to Administer Oaths*

31. Power to administer oath.

### PART 1A. *Hearsay and Computer-generated Evidence*

31A. Admissibility of certain evidence formerly admissible at common law.

31B. Interpretation.

31C. Admissibility of written statement in criminal proceedings.

31D. Admissibility of first-hand hearsay statements in criminal pro-proceedings.

31E. Admissibility of first-hand hearsay statements in civil proceedings.

31F. Admissibility of business documents in civil or criminal proceedings.

31G. Admissibility of computer evidence constituting hearsay.

31H. Admissibility of computer evidence not constituting hearsay.

31I. Witness' previous statement to be evidence of facts stated.

31J. Admissibility of evidence as to credibility of maker of statement.

31K. Offence.

31L. Power of Court to exclude evidence.

PART II. *Banker's Books Evidence*

32. Interpretation.

33. Copies of entries in banker's books, *prima facie* evidence.

34. Proof that book is a banker's book.

35. Verification of copy.

36. Case in which banker, etc., not compellable to produce book, etc.

37. Court or Judge may order inspection, etc.

38. Costs.

PART III. *Telegraphic Messages Evidence*

39. Definitions.

40. Notice of intention to give telegraphic messages in evidence.

41. Effect of such notice towards making such messages *prima facie* evidence.

42. *Prima facie* evidence of due delivery of a telegraphic message.

43. Power to send documents, orders, etc., by electric telegraph. Provisions to be observed in so doing.

44. Validity, effect and admissibility in evidence of copies of such documents, etc., so sent.

45. Transmission of such documents, etc., to the Postmaster-General, and inspection thereof.
46. Wilful misdelivery of telegraphic message.
47. Unlawfully sending message in the name of another person.
48. False endorsements, certificates and information.
49. False certificate of receipt of document.
    Penalty.

PART IV.  *Medical Evidence*

50. Medical certificates and reports admissible in evidence.
51. Saving.

PART V.  *Island Chemist's Certificate*

52. Certificate *prima facie* evidence at preliminary investigation.
53. Coroner's inquest.
54. Interpretation.

PART VI.  *Service of Courts Process (Proof)*

55. Service of summons may be proved by affidavit or affirmation.
56. Form of affidavit.
57. Original summons to be marked for identification.
58. Affidavit under sections 55 and 56 shall be received in evidence.
59. Proof of service of process.

SCHEDULE

[The inclusion of this page is authorized by L.N. 95/1997]

Cap. 118.
Laws
22 of 1954,
31 of 1960
S. 29.
Acts
40 of 1968,
42 of 1969
3rd. Sch.,
12 of 1995,
12 of 2009
3rd Sch.

## THE EVIDENCE ACT

[*1843.*]

**1.** This Act may be cited as the Evidence Act. ·      Short title.

### PART I. *Competency of Witnesses*

**2.** No person offered as a witness shall be excluded, by reason of incapacity from crime or interest, from giving evidence either in person or by deposition, according to the practice of the court, on the trial of any issue joined, or of any matter or question or any inquiry arising in any suit, action, or proceeding, civil or criminal, in any court, or before any Judge, Jury, Coroner, Magistrate, Officer, or person having by law or by consent of parties authority to hear, receive, and examine evidence; but every person so offered may and shall be admitted to give evidence on oath (or solemn affirmation in those cases wherein affirmation is by law receivable) notwithstanding that such person may or shall have an interest in the matter in question, or in the event of the trial of any issue, matter, question, or inquiry, or of the suit, action, or proceeding, in which he is offered as a witness, and notwithstanding that such person offered as a witness may have been previously convicted of any crime or offence:

Removal of incapacity to testify from crime or interest.

Provided, that this section shall not repeal any provision in the Wills Act:

Provided also that in Courts of Equity any defendant to any cause pending in any such Court may be examined as a witness on the behalf of the plaintiff or of any co-defendant in any such cause, saving just exceptions, and that any interest which such defendant so to be examined may have in the matters, or any' of the matters, in question

in the cause, shall not be deemed a just exception to the testimony of such defendant, but shall only be considered as affecting or tending to affect, the credit of such defendant as a witness.

**Parties to record may be examined as witnesses.**

**3.** On the trial of any issue joined, or of any matter or question, or on any inquiry arising in any suit, action, or other proceeding in any court of justice, or before any person having by law, or by consent of parties, authority to hear, receive, and examine evidence, the parties thereto, and the persons in whose behalf any such suit, action, or other proceeding may be brought or defended, shall be competent and compellable to give evidence, either *viva voce,* or by deposition, according to the practice of the court, on behalf of either or any of the parties to the said suit, action, or other proceeding,

**Husbands' and wives' evidence against each other.**

**4.**—(1) On the trial of any issue joined, or of any matter, or question, or on any inquiry arising in any suit, action, or other proceeding in any court of justice, or before any person having by law, or by consent of parties, authority to hear, receive, and examine evidence, the husbands and wives of the parties thereto, and of the persons on whose behalf any such suit, action, or other proceeding may be brought, or instituted, or opposed, or defended, shall, except as hereinafter excepted, be competent and compellable to give evidence, either *viva voce* or by deposition, according to the practice of the court, on behalf of either or any of the parties to the said suit, action, or other proceeding.

**Exceptions.**

(2) Nothing in subsection (1) shall render any husband competent or compellable to give evidence for or against his wife, or any wife competent or compellable to give evidence for or against her husband in any criminal proceeding.

**5.**—(1) Notwithstanding any rule of law, the evidence of a husband or wife shall be admissible in any proceedings to prove that marital intercourse did or did not take place between them during any period. <span style="float:right">Evidence of access.</span>

(2) Notwithstanding anything in this section or in any rule of law, a husband or wife shall not be compelled in any proceedings to give evidence of the matters aforesaid.

**6.** No husband shall be compellable to disclose any communication made to him by his wife during the marriage, and no wife shall be compellable to disclose any communication made to her by her husband during the marriage. <span style="float:right">Not compellable to disclose communication made during marriage.</span>

**7.** The parties to any action for breach of promise of marriage shall be competent to give evidence in such action: <span style="float:right">In action for breach of promise of marriage, how far parties competent to give evidence.</span>

Provided always, that no plaintiff in any action for breach of promise of marriage shall recover a verdict unless his or her testimony shall be corroborated by some other material evidence in support of such promise.

**8.** [*Repealed by Act 12 of 1995.*]

*Accused Persons' competency to give Evidence*

**9.** Every person charged with an offence, and the wife or husband, as the case may be, of the person so charged, shall be a competent witness for the defence at every stage of the proceedings, whether the person so charged is charged solely or jointly with any other person: <span style="float:right">Accused persons and their wives competent witnesses.</span>

Provided as follows—

(a) A person so charged shall not be called as a witness in pursuance of this Act, except upon his own application.

(b) The failure of any person charged with an offence, or of the wife or husband, as the case may be, of the person so charged, to give evidence shall not be made the subject of any comment by the prosecution.

(c) The wife or husband of the person charged shall not, save as in this Act mentioned, be called as a witness in pursuance of this Act, except upon the application of the person so charged.

(d) Nothing in this Act shall make a husband compellable to disclose any communication made to him by his wife during the marriage, or a wife compellable to disclose any communication made to her by her husband during the marriage.

(e) A person charged and being a witness in pursuance of this Act may be asked any question in cross-examination notwithstanding that it would tend to criminate him as to the offence charged.

(f) A person charged and called as a witness in pursuance of this Act shall not be asked, and if asked, shall not be required to answer, any question tending to show that he has committed or been convicted or been charged with any offence other than that wherewith he is then charged, or is of bad character, unless—

   (i) the proof that he has committed or been convicted of such other offence is admissible evidence to show that he is guilty of the offence wherewith he is then charged; or

   (ii) he has personally or by his advocate asked questions of the witnesses for the prosecution with a view to establish his own good character, or has given evidence of his good character, or the nature or conduct of the

defence is such as to involve imputations on the character of the prosecutor or the witnesses for the prosecution; or

(iii) he has given evidence against any other person charged with the same offence.

(g) Every person called as a witness in pursuance of this Act shall, unless otherwise ordered by the Court, give his evidence from the witness box or other place from which the other witnesses give their evidence.

(h) Nothing in this Act shall affect the provisions of section 36 of the Justices of the Peace Jurisdiction Act; or any right of the person charged to make a statement without being sworn.

**10.** Where the only witness to the facts of the case called by the defence is the person charged, he shall be called as a witness immediately after the close of the evidence for the prosecution.

*Where accused himself is his only witness.*

**11.** In cases where the right of reply depends upon the question whether evidence has been called for the defence, the fact that the person charged has been called as a witness shall not of itself confer on the prosecution the right of reply.

*Right of reply does not accrue to prosecution because accused has given evidence.*

**12.**—(1) The wife or husband of a person charged with an offence under any Act or part of an Act mentioned in the First Schedule may be called as a witness either for the prosecution or defence and without the consent of the person charged.

*When wife or husband of accused may be called as witness for prosecution.*

(2) Nothing in this Act shall affect a case where the wife or husband of a person charged with an offence may at common law be called as a witness without the consent of that person.

*First Schedule.*

**Sections 9
to 12 apply
to all
criminal
proceed-
ings.
42/1969
3rd Sch.**

**13.** Sections 9 to 12 inclusive shall apply to all criminal proceedings.

**Sections 9
to 12 apply
to courts-
martial if
so pro-
vided.**

**14.** Sections 9 to 12 inclusive shall apply to proceedings in courts-martial if so provided—

    (a) as to courts-martial under the United Kingdom Naval Discipline Act, 29 and 30 Victoria, chapter 109, by general orders made in pursuance of section 65 of that Act; and

    (b) as to courts-martial under the United Kingdom Army Act, 44 and 45 Victoria, chapter 58, by rules made in pursuance of section 70 of that Act.

### *Impeaching Credit, Cross-examination of Witness*

**Impeach-
ing credit
of witness
when and
how
allowed to
be done by
party pro-
ducing
him.**

**15.** A party producing a witness shall not be allowed to impeach his credit by general evidence of bad character, but he may, in case the witness shall, in the opinion of the Judge, prove adverse, contradict him by other evidence, or by leave of the Judge, prove that he has made at other times a statement inconsistent with his present testimony; but before such last-mentioned proof can be given, the circumstances of the supposed statement, sufficient to designate the particular occasion, must be mentioned to the witness, and he must be asked whether or not he has made such statement.

**How and
when
witness'
evidence
on cross-
examina-
tion may
be con-
tradicted.**

**16.** If a witness, upon cross-examination as to a former statement made by him relative to the subject-matter of the cause, and inconsistent with his present testimony, does not distinctly admit that he has made such statement, proof may be given that he did in fact make it; but before such proof can be given, the circumstances of the supposed

statement, sufficient to designate the particular occasion, must be mentioned to the witness, and he must be asked whether or not he has made such statement.

17. A witness may be cross-examined as to previous statements made by him in writing, or reduced into writing, relative to the subject-matter of the cause, without such writing being shown to him; but if it is intended to contradict such witness by the writing, his attention must, before such contradictory proof can be given, be called to those parts of the writing which are to be used for the purpose of so contradicting him: Cross-examination as to statements reduced to writing.

Provided always, that it shall be competent for the Judge at any time during the trial, to require the production of the writing for his inspection, and he may thereupon make such use of it for the purpose of the trial as he shall think fit.

18. A witness in any cause may be questioned as to whether he has been convicted of any felony or misdemeanour, and, upon being so questioned, if he either denies the fact, or refuses to answer, it shall be lawful for the opposite party to prove such conviction; and a certificate containing the substance and effect only (omitting the formal part) of the indictment and conviction for such offence, purporting to be signed by the Clerk of the Court or other officer having the custody of the records of the court, where the offender was convicted, or by the deputy of such Clerk or officer shall, upon proof of the identity of the person, be sufficient evidence of the said conviction, without proof of the signature or official character of the person appearing to have signed the same. Questions whether witness has been convicted of felony or misdemeanour allowable.

### Proof of Written Instrument and Comparison of Handwriting

19. It shall not be necessary to prove by the attesting witness any instrument to the validity of which attesta- Proof of instruments in writing.

tion is not requisite; and such instrument may be proved
by admission or otherwise, as if there had been no attesting
witness thereto.

**20.** Comparison of a disputed writing with any writing
proved to the satisfaction of the Judge to be genuine shall
be permitted to be made by witnesses; and such writings,
and the evidence of witnesses respecting the same, may be
submitted to the court and jury as evidence of the genuine-
ness, or otherwise, of the writing in dispute.

### *Application of Sections*

Sections 15
to 20
apply to
courts of
civil and
criminal
judicature.
**21.** The provisions of sections 15 to 20 both inclusive,
shall apply to every court of civil and criminal judicature,
and in all legal proceedings, civil and criminal.

### *Admissibility of various Documents and Copies*

**22.** Whenever by any enactment now in force or hereafter
to be in force any certificate, official or public document or
documents, or proceeding of any corporation, or joint stock
or other company, or any certified copy of any document,
by-law, entry in any register or other book, or of any other
proceeding, shall be receivable in evidence of any parti-
cular in any court of justice, or before any legal tribunal,
or the Senate or House of Representatives of this Island, or
any Committee of the Senate or House of Representatives
or in any judicial proceeding, the same shall respectively
be admitted in evidence provided they respectively purport
to be sealed or impressed with a stamp, or sealed and
signed, or signed alone, as required, or impressed with a
stamp and signed, as directed by the respective enactments
made or to be hereafter made, without any proof of the seal
or stamp where a seal or stamp is necessary, or of the signa-
ture, or of the official character of the person appearing to
have signed the same, and without any further proof there-

of, in every case in which the original record could have been received in evidence.

**23.** All courts, Judges, Justices, the Registrar of the Supreme Court, Taxing Officers of courts, Commissioners judicially acting, and other Judicial Officers, shall henceforth take judicial notice of the signature of any of Her Majesty's Judges of the Supreme Court of Judicature in England, and of the Judges of the Supreme Court in this Island, provided such signature be attached or appended to any decree, order, certificate, or other judicial or official document. <span style="float:right">Judicial notice to be taken of signature of Judges of Superior Courts.</span>

**24.** All copies of private Acts of the United Kingdom Parliament, if purporting to be printed by the Queen's Printer, and all copies of private Laws and Acts of the Legislature of this Island, if purporting to be printed by the Government Printing Office or Government Printer and all copies of the Minutes of the Senate or House of Representatives of this Island, and of Royal Proclamations, purporting to be printed by the Printers to the Crown, or by the Government Printing Office or Government Printer respectively, or by any or either of them, shall be admitted as evidence thereof by all courts, Judges, Justices, and others, without any proof being given that such copies were so printed. <span style="float:right">Private Laws and Acts and minutes of Legislature.</span>

**25.** All proclamations, treaties, and other Acts of State of any Foreign State, or Commonwealth country, and all judgments, decrees, orders and judicial proceedings of any court of justice in any Foreign State, or in any Commonwealth country, and all affidavits, pleadings, and other <span style="float:right">Acts of State, etc.</span>

legal documents filed or deposited in any such court, may be proved in any court of justice, or before any person having by law, or by consent of parties, authority to hear, receive and examine evidence, either by examined copies, or by copies authenticated as hereinafter mentioned; that is to say, if the document sought to be proved be a proclamation, treaty, or other Act of State the authenticated copy to be admissible in evidence, must purport to be sealed with the seal of the Foreign State, or Commonwealth country to which the original document belongs; and if the document sought to be proved be a judgment, decree, order, or other judicial proceeding of any Foreign, or Commonwealth court, or an affidavit, pleading, or other legal document filed or deposited in any such court, the authenticated copy, to be admissible in evidence, must purport either to be sealed with the seal of the Foreign, or Commonwealth court to which the original document belongs, or, in the event of such court having no seal, to be signed by the Judge; or if there be more than one Judge, by any one of the Judges of the said court; and such Judge shall attach to his signature a statement in writing on the said copy that the court whereof he is a Judge has no seal; but if any of the aforesaid authenticated copies shall purport to be sealed or signed as hereinbefore respectively directed, the same shall respectively be admitted in evidence in every case in which the original document could have been received in evidence, without any proof of the seal where a seal is necessary, or of the signature, or of the truth of the statement attached thereto, where such signature and statement are necessary, or of the judicial character of the person appearing to have made such signature and statement.

[The inclusion of this page is authorized by L.N. 95/1997]

**26.** Every register of a vessel kept under any of the Acts relating to the registry of British vessels may be proved in any court of justice, or before any person having by law or by consent of parties authority to hear, receive, and examine evidence, either by the production of the original, or by any examined copy thereof, or by a copy thereof purporting to be certified under the hand of the person having the charge of the original, and which person is hereby required to furnish such certified copy to any person applying at a reasonable time for the same, upon payment of the sum of ten cents; and every such register, or such copy of a register, and also every certificate of registry granted under any of the Acts relating to the registry of British vessels, and purporting to be signed as required by law, shall be received in evidence in any court of justice, or before any person having by law, or by consent of parties, authority to hear, receive, and examine evidence, as *prima facie* proof of all the matters contained or recited in such register, when the register or such copy thereof as aforesaid is produced, and of all the matters contained or recited in or endorsed on such certificate of registry, when the said certificate is produced.

*Registers of ships.*

**27.** Whenever, in any proceeding whatever, it may be necessary to prove the trial and conviction or acquittal of any person charged with any indictable offence, it shall not be necessary to produce the record of the conviction or acquittal of such person, or a copy thereof, but it shall be sufficient that it be certified, or purport to be certified under the hand of the Clerk of the Court, or other officer having the custody of the records of the court where such conviction or acquittal took place, or by the Deputy of such Clerk or other officer, that the paper produced is a copy of the record of the indictment, trial, conviction, and judgment or acquittal, as the case may be, omitting the formal parts thereof.

*Certificate of conviction or acquittal.*

[The inclusion of this page is authorized by L.N. 480/1973]

**Examined copies of contents of books of public nature.**

28. Whenever any book or other document is of such a public nature as to be admissible in evidence on its mere production from the proper custody, and no statute exists which renders its contents provable by means of a copy, any copy thereof or extract therefrom shall be admissible in evidence in any court of justice, or before any person now or hereafter having, by law or by consent of parties authority to hear, receive, and examine evidence:

Provided it be proved to be an examined copy or extract, or provided it purport to be signed and certified as a true copy or extract by the officer to whose custody the original is entrusted; and which officer is hereby required to furnish such certified copy or extract to any person applying at a reasonable time for the same, upon payment of a reasonable sum for the same, not exceeding five cents for every folio of ninety words.

**Power of Court to impound documents.**

29. Where any document has been admitted in evidence before any court and such court is of the opinion that, in relation to that document, an offence has been committed, the court may impound such document and make such order in relation to it as the court may think fit.

### Penalty for False Certificate

**Wilfully certifying false certificate.**

30. If any officer authorized or required by this Act to furnish any certified copies or extract, shall wilfully certify any document as being a true copy or extract, knowing that the same is not a true copy or extract, as the case may be, he shall be guilty of a misdemeanour, and be liable, upon conviction, to imprisonment for a term not exceeding eighteen months.

### Power to Administer Oaths

**Power to administer oath.**

31. Every court, Judge, Justice, Officer, Commissioner, Arbitrator, or other person now or hereafter having by law or by consent of parties authority to hear, receive, and

examine evidence, is hereby empowered to administer an oath to all such witnesses as are legally called before them respectively.

PART IA. *Hearsay and Computer-generated Evidence*

<sup> </sup>
12/1995
S. 3.

**31A.** In any proceedings a statement which, before the 30th day of March, 1995, would by virtue of any rule of law, have been admissible in evidence of any fact stated therein, shall continue to be admissible as evidence of that fact by virtue of this section.

Admissi-
bility of
certain
evidence
formerly
admissible
at com-
mon law.

**31B.** In this Part—

Interpre-
tation.
12/1995
S. 3.

"document" includes, in addition to a document in writing—

- (a) any map, plan, graph or drawing;
- (b) any photograph;
- (c) any disc, tape, sound track or other device in which sounds or other data (not being visual images) are embodied so as to be capable (with or without the aid of some other equipment) of being reproduced therefrom;
- (d) any film (including microfilm), negative, tape or other device in which one or more visual images are embodied so as to be capable (with or without the aid of some other equipment) of being reproduced therefrom.

**31C.**—(1) Subject to this section, in any criminal proceedings, a written statement by a person shall, if the conditions specified in subsection (2) are satisfied, be admissible in evidence to the same extent and effect as direct oral evidence by that person.

Admissi-
bility of
written
statement
in criminal
proceedings.
12/1995
S. 3.

(2) The conditions referred to in subsection (1) are that—

(a) the statement purports to be signed by the person who made it;

(b) a copy of the statement and a notice of intention to tender the statement in evidence are served on all other parties to the proceedings by or on behalf of the person seeking to tender the statement in evidence, at least twenty-one days before the hearing at which the statement is to be so tendered;

(c) none of the other parties to the proceedings or their attorneys-at-law have, within ten days from the service of the copy of the statement, served a counter-notice on the party seeking so to tender it, objecting to the statement being tendered in evidence and requiring the attendance of the maker of the statement as a witness at the hearing;

(d) notice of the intention to tender the statement in evidence is accompanied by a declaration by the person who made it to the effect that it is true to the best of his knowledge and belief and that he made it knowing that, if it were tendered in evidence, he would be liable to prosecution if he wilfully stated in it anything which he knew to be false or did not believe to be true.

(3) Paragraphs (b) and (c) of subsection (2) shall not apply if the parties to the proceedings agree before or during the hearing that the statement be tendered in evidence.

(4) A statement shall be inadmissible in evidence under this section in any criminal proceedings where a party to the proceedings has served a counter-notice objecting to the statement being tendered in evidence and requiring the person who made the statement to attend the hearing as a witness.

(5) Notwithstanding that a written statement made by any person may be admissible by virtue of subsection (2), the court may, on its own motion or on application by any party to the proceedings, require that the maker of the statement attend and give oral evidence at the hearing.

(6) Notwithstanding the failure of any party to the proceedings to serve a counter-notice objecting to the admissibility of the statement, the court may, if it thinks fit, permit that party to lead evidence contradicting the evidence contained in the written statement.

(7) Where contradicting evidence is given as mentioned in subsection (6), the party who tendered the written statement may lead additional evidence in response to the contradicting evidence.

**31D.** Subject to section 31G, a statement made by a person in a document shall be admissible in criminal proceedings as evidence of any fact of which direct oral evidence by him would be admissible if it is proved to the satisfaction of the court that such person— <span style="font-size:small">Admissibility of first-hand hearsay statements in criminal proceedings. 12/1995 S. 3.</span>

    (a)  is dead;

    (b)  is unfit, by reason of his bodily or mental condition, to attend as a witness;

    (c)  is outside of Jamaica and it is not reasonably practicable to secure his attendance;

    (d)  cannot be found after all reasonable steps have been taken to find him; or

    (e)  is kept away from the proceedings by threats of bodily harm and no reasonable steps can be taken to protect the person.

Admissi-
bility of
first-hand
hearsay
statements
in civil
proceedings.
12/1995
S. 3.

**31E.**—(1) Subject to section 31G, in any civil proceedings, a statement made, whether orally or in a document or otherwise, by any person (whether called as a witness in those proceedings or not) shall subject to this section, be admissible as evidence of any facts stated therein of which direct oral evidence by him would be admissible.

(2) Subject to subsection (6), the party intending to tender such statement in evidence shall, at least twenty-one days before the hearing at which the statement is to be tendered, notify every other party to the proceedings as to the statement to be tendered, and as to the person who made the statement.

(3) Subject to subsection (4), every party so notified shall have the right to require that the person who made the statement be called as a witness.

(4) The party intending to tender the statement in evidence shall not be obliged to call, as a witness, the person who made the statement if it is proved to the satisfaction of the court that such person—

(a) is dead;

(b) is unfit, by reason of his bodily or mental condition, to attend as a witness;

(c) is outside of Jamaica and it is not reasonably practicable to secure his attendance;

(d) cannot be found after all reasonable steps have been taken to find him; or

(e) is kept away from the proceedings by threats of bodily harm.

(5) Where in any civil proceedings a statement which was made otherwise than in a document is admissible by virtue of this section, no evidence other than direct oral evidence by the person who made the statement or any

person who heard or otherwise perceived it being made shall
be admissible for the purpose of proving it.

(6) The court may, where it thinks appropriate
having regard to the circumstances of any particular case,
dispense with the requirements for notification as specified
in subsection (2).

(7) Where the party intending to tender a statement in evidence has called, as a witness in the proceedings, the person who made the statement, the statement shall be admissible only with the leave of the court.

31F.—(1) Subject to section 31G, a statement in a document shall be admissible as evidence of any fact stated therein of which direct oral evidence would be admissible if in relation to— <span style="float:right">Admissibility of business documents in civil or criminal proceedings. 12/1995 S. 3.</span>

(*a*) criminal proceedings, the conditions specified in—

    (i) subsection (2); and

    (ii) subsection (3),

are satisfied;

(*b*) civil proceedings, the conditions specified in—

    (i) subsection (2); and

    (ii) subsection (4),

are satisfied.

(2) The conditions referred to in subsection (1) (*a*) and (*b*) (i) are that—

(*a*) the document was created or received by a person in the course of a trade, business, profession or other occupation or as the holder of an office, whether paid or unpaid;

(*b*) the information contained in the document was supplied (whether directly or indirectly) by a person, whether or not the maker of the statement,

who had or may reasonably be supposed to have
had, personal knowledge of the matters dealt with
in the statement;

(c) each person through whom the information was
supplied received it in the course of a trade,
business profession or other occupation or as the
holder of an office, whether paid or unpaid.

(3) The condition referred to in subsection (1) (a)
(ii) is that it be proved to the satisfaction of the court that
the person who supplied the informaton contained in the
statement in the document—

(a) is dead;

(b) is unfit, by reason of his bodily or mental condition,
to attend as a witness;

(c) is outside of Jamaica and it is not reasonably prac-
ticable to secure his attendance;

(d) cannot be found or identified after all reasonable
steps have been taken to find or to identify him;

(e) is kept away from the proceedings by threats of
bodily harm and no reasonable steps can be taken
to protect the person; or

(f) cannot reasonably be expected, having regard to
the time which has elapsed since he supplied the
information and to all the circumstances, to have
any recollection of the matters dealt with in the
statement.

(3A) In estimating the weight, if any, to be attached
to a statement admissible in criminal proceedings as evidence
by virtue of this section, regard shall be had to all the cir-
cumstances from which any inference can reasonably be
drawn as to the accuracy or otherwise of the statement, and,
in particular, to the question whether or not the person
who supplied the information recorded in the statement did

so contemporaneously with the occurrence or existence of the facts stated, and to the question whether or not that person, or any person concerned with making or keeping the record containing the statement, had any incentive to conceal or misrepresent the facts.

(4) Subject to subsections (5) to (8), the condition referred to in subsection (1) (*b*) (ii) is that the party intending to tender the statement in evidence shall, at least twenty-one days before the hearing at which the statement is to be so tendered, notify every other party to the proceedings as to the statement and as to the person who made the statement.

(5) Subject to subsection (6), every party so notified shall have the right to require that the person who made the statement be called as a witness.

(6) The party intending to tender the statement in evidence shall not be obliged to call, as a witness, the person who made it if it is proved to the satisfaction of the court that such person—

(*a*) is dead;

(*b*) is unfit, by reason of his bodily or mental condition, to attend as a witness;

(*c*) is outside of Jamaica and it is not reasonably practicable to secure his attendance;

(*d*) cannot be found or identified after all reasonable steps have been taken to find or identify him;

(*e*) is kept away from the proceedings by threats of bodily harm.

(7) The Court may, where it thinks appropriate having regard to the circumstances of any particular case, dispense with the requirements for notification as specified in subsection (4).

(8) Where the person who made the statement is called as a witness, the statement shall be admissible only with the leave of the court.

Admissi-
bility of
computer
evidence
constituting
hearsay.
12/1995
S. 3.

**31G.** A statement contained in a document produced by a computer which constitutes hearsay shall not be admissible in any proceedings as evidence of any fact stated therein unless—

  (a)  at all material times—

    (i)  the computer was operating properly;

    (ii)  the computer was not subject to any mal-function;

    (iii)  there was no alterations to its mechanism or processes that might reasonably be expected to have affected the validity or accuracy of the contents of the document;

  (b)  there is no reasonable cause to believe that—

    (i)  the accuracy or validity of the document has been adversely affected by the use of any improper process or procedure or by inadequate safeguards in the use of the computer;

    (ii)  there was any error in the preparation of the data from which the document was produced;

  (c)  the computer was properly programmed;

  (d)  where two or more computers were involved in the production of the document or in the recording of the data from which the document was derived—

    (i)  the conditions specified in paragraphs (a) to (c) are satisfied in relation to each of the computers so used; and

    (ii)  it is established by or on behalf of the person tendering the document in evidence that the

use of more than one computer did not introduce any factor that might reasonably be expected to have had any adverse effect on the validity or accuracy of the document.

**31H.** Where a statement contained in a document produced by a computer does not constitute hearsay, such a statement shall be admissible if the conditions specified in section 31G are satisfied in relation to that document.

Admissibility of computer evidence not constituting hearsay. 12/1995 S. 3.

**31I.**—(1) Where in any civil proceedings—

Witness' previous statement to be evidence of facts stated. 12/1995 S. 3.

   (a) a previous inconsistent or contradictory statement made by a person called as a witness in those proceedings is proved by virtue of sections 15 to 17; or

   (b) a previous statement made by a person called as aforesaid is proved for the purpose of rebutting a suggestion that his evidence has been fabricated,

that statement shall, by virtue of this subsection, be admissible in evidence of any fact stated therein of which direct oral evidence by him would be admissible.

   (2) Nothing in this section shall affect any rule of law relating to the circumstances in which, where a person called as a witness in any civil proceedings is cross-examined on a document used by him to refresh his memory, that document may be made evidence in those proceedings; and where a document or any part of a document is received in evidence in any such proceedings by virtue of any such rule of law, any statement made in that document or part by the person using the document to refresh his memory shall, by virtue of this subsection, be admissible as evidence of any fact stated therein of which direct oral evidence by him would be admissible.

Admissibility of evidence as to credibility of maker of statement.
12/1995
S. 3.

**31J.**—(1) Where in any proceedings a statement made by a person who is not called as a witness in those proceedings is given in evidence pursuant to section 31D, 31E, 31F or 31G—

    (a) any evidence which, if that person had been so called would have been admissible as relevant to his credibility as a witness, shall be admissible in the proceedings for that purpose;

    (b) evidence may, with the leave of the court, be given of any matter which, if that person had been called as a witness, could have been put to him in cross-examination as relevant to his credibility as a witness but of which evidence could not have been adduced by the party cross-examining him;

    (c) evidence tending to prove that, whether before or after he made the statement, that person made (whether orally or in a document or otherwise) another statement inconsistent therewith, shall be admissible for the purpose of showing that the person has contradicted himself.

(2) References in subsection (1) to a person who made the statement and to his making the statement shall be construed respectively as including references to the person who supplied the information from which the document containing the statement was derived and to his supplying that information.

Offence.
12/1995
S. 3.

**31K.** If any person in a written statement tendered in evidence in criminal proceedings by virtue of section 31C wilfully makes a statement material in those proceedings which he knows to be false or does not believe to be true, he shall be liable on conviction on indictment to a fine or to imprisonment for a term not exceeding seven years or to both such fine and imprisonment.

**31L.** It is hereby declared that in any proceedings the court may exclude evidence if, in the opinion of the court, the prejudicial effect of that evidence outweighs its probative value.

Power of court to exclude evidence. 12/1995 S. 3.

### Part II. *Banker's Books Evidence*

**32.—(1)** In this Part—

Interpretation. 31/1960 S. 29.

"bank" or "banker" means any bank licensed under the Banking Act, the Workers Savings and Loan Bank constituted under the Workers Savings and Loan Bank Act and any other Savings Bank established and carrying on business within the Island under the provisions of any law relating to Savings Banks; and the fact that any such Savings Bank is established and carrying on business as aforesaid may be proved by the production of an office or examined copy of the rules or regulations of that Savings Bank certified under the provisions of the law under which it is established;

"banker's books" includes ledgers, day books, cash books, account books, and all other books used in the ordinary business of the bank;

"legal proceeding" means any civil or criminal proceeding or inquiry in which evidence is or may be given, and includes an arbitration;

"the court" means the court, Judge, Arbitrator, persons or person before whom a legal proceeding is held or taken;

"a Judge" means a Judge of the Supreme Court of Judicature of Jamaica.

(2) The Judge of a Resident Magistrate's Court may with respect to any action in such Court exercise the powers of a Judge under this Part.

Marion V. Cruz (SBN 244223 )
Email: Marion.Cruz@WilsonElser.com
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
525 Market Street, 17th Floor
San Francisco, California 94105
Telephone:  (415) 433-0990
Facsimile:  (415) 434-1370

Attorneys for Plaintiff
CARLTON A. MASTERS

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re* Ex Parte Application of | : |
| | : CASE NO.____ |
| **CARLTON A. MASTERS** | : |
| | : **[PROPOSED]** |
| Applicant. | : **ORDER** |
| | : **GRANTING LEAVE TO OBTAIN** |
| | : **DISCOVERY FOR USE IN A FOREIGN** |
| | : **PROCEEDING** |

This matter comes before the Court on the Ex Parte application for a subpoena for discovery in a foreign proceeding, pursuant to 28 U.S.C. 1782, of Carlton A. Masters, the Claimant in Action No. 00130; *Carlton A. Masters v. First Global Bank of Jamaica,* pending in the Supreme Court of Judicature of Jamaica, Commercial Court. For reasons stated in the Application and for good cause, this Court grants the Application and allows the issuance of the Subpoena to Google Inc. in the form attached hereto.

IT IS SO ORDERED:


By:_____
      UNITED STATES DISTRICT JUDGE

796140v.2

## CERTIFICATE OF SERVICE

I certify that on the 11 day of Feb. 2015, I served a copy of the attached Application of Carlton A. Masters for a Subpoena together with its supporting Memorandum of Points and Authorities, Declarations of Carlton A. Masters and Elizabeth B. Sandza and Proposed Order and Subpoena, by first class U.S. mail and E-mail, on the following counsel:

Attorneys at Law For the Defendant
Maureen Hayden-Cater
B. St. Michael Hylton, Q.C.
Shanique Scott
Hylton Powell
11A Oxford Road
Kingston 5
Saint Andrew, Jamaica
info@HyltonPowell.com

Attorneys at Law for the Claimant
Suzanne Risden Foster
Denise Kitson, Q.C.
Grant, Stewart, Phillips & Co.
11A Swallowfield Road
Kingston 5
Saint Andrew, Jamaica
Suzanne.RisdenFoster@gspco.net
Denise.Kitson@gspco.net

By: _____